UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ANTHONY S. IOPPOLO, M.D

VERSUS

CHRISTOPHER RUMANA, M.D., ET AL

CIVIL ACTION

NO. 06-193-JJB

## RULING ON MOTIONS TO DISMISS

Before the Court is a Motion to Dismiss (doc. 9) and a Renewed Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. 111) filed by Defendants American Association of Neurological Surgeons and the American Association of Neurosurgeons (collectively, the "AANS"). Plaintiff Dr. Anthony S. Ioppolo ("Ioppolo") has filed opposition. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper as the events giving rise to this litigation occurred in this District. For the reasons stated herein, the Court will GRANT Defendants' Motions to Dismiss.

## Background

**I.    Facts**

Ioppolo was retained to provide expert medical opinion testimony in a Florida medical malpractice suit entitled, *Jones v. Tallahassee Memorial Healthcare, Inc., et al, 2nd Circuit, Leon County, Fla. #98-6986* ("the underlying case"). During the proceedings, Ioppolo provided deposition testimony as well as testimony at trial. At trial, the Court accepted Ioppolo as an expert in the field of neurological surgery and he was allowed to provide the court with his opinion.

1

Prior to verdict, the defendants in the underlying case, Drs. Christopher Rumana ("Rumana"), Mark Cuffe ("Cuffe"), and representatives of another defendant neurosurgeon (who was deceased by the time of trial), settled the claims lodged against them.

Ioppolo alleges that, following the conclusion of the *Jones* trial, Rumana and Cuffe wrote a letter to the AANS criticizing his "ethics, honesty, integrity, and professionalism." Specifically, the letter accused Ioppolo of giving false and misleading testimony during the proceedings of the underlying *Jones* case.

After receipt of the letter, the AANS convened a committee of its members known as the Professional Conduct Committee ("PCC") to investigate the allegations advanced by Rumana and Cuffe. In a report outlining its provisional findings, the PCC recommended the imposition of sanctions against Ioppolo.

Ioppolo discovered that Rumana and Cuffe violated the AANS's by-laws by sending a copy of the PCC's preliminary findings to several entities where he maintained professional relationships: Louisiana Worker's Compensation Corporation (where he served as medical director), Vista Surgical Hospital (where he served as medical director), and the Neuromedical Center (where he holds professional connections). Ioppolo further asserts that Rumana and Cuffe sent another written communication to the Louisiana Board of Medical Examiners on March 7, 2005 and that he learned on April 18, 2005, that Rumana and Cuffe made another complaint about him to the American College of Surgeons.

In April 2005, after reviewing the PCC's recommendation, the AANS Board of Directors approved and adopted the PCC's report at its annual meeting in New Orleans. In light of the outcome, Ioppolo alleges that he urged the Board to require Rumana and Cuffe to stop circulating the provisional findings of the PCC and to retract their statements. The Board did not honor his request and did not intervene.

**II. Procedural History**

On February 9, 2006, Ioppolo filed suit in the 19th Judicial District Court against Rumana, Cuffe, The American College of Surgeons, The American Association of Neurological Surgeons, Inc., and The American Association of Neurosurgeons. In his Complaint, Ioppolo alleged that the actions of the defendants constituted defamation, abuse of process, abuse of personal rights, and intentional infliction of emotional distress. Defendants removed the case to this Court on the basis of diversity jurisdiction on March 10, 2006.

On March 29, 2006, the AANS moved to dismiss Ioppolo's Complaint on the grounds that he had not alleged any facts to support his claims of defamation, abuse of process, abuse of personal rights, and intentional infliction of emotional distress against them. The next day, Rumana and Cuffe followed suit, and also filed a joint Motion to Dismiss.

On April 18, 2006, Ioppolo requested that this court grant a temporary restraining order suspending the discussion of his appeal at the AANS' annual meeting, which discussion was being held in New Orleans on the following

Monday. The Court held oral arguments on Plaintiff's Application for Temporary Restraining Order on April 24, 2006. In that hearing, the Court denied Plaintiff's request on the grounds that he still had the possibility to win his appeal before the Board scheduled for that later that day. In doing so, the Court reasoned that Plaintiff could not prove one of the necessary elements to grant a preliminary injunction—namely, he could not prove that he would suffer irreparable injury if the injunction was not granted.

Later that day, Ioppolo's appeal to the general membership failed. The membership of the AANS upheld the PCC's findings, and as a result, the AANS suspended Dr. Ioppolo's membership in the organization.

The next day, on April 25, 2006, Ioppolo requested a second temporary restraining order to prevent the AANS from "instituting, reporting or in any way publishing the sanctions which it seeks to impose during the pendency of this case and until such time as the case can be heard." This time, the Court granted injunctive relief and ordered him to submit a TRO for the Court's signature every ten days until July 19, 2006. On July 18, 2006, all parties consented to a preliminary injunction.

The Court heard oral arguments on the pending Motions to Dismiss on July 17, 2008. During these proceedings, the Court denied the Motion to Dismiss filed by Rumana and Cuffe and deferred ruling on the Motion to Dismiss by the AANS. In doing so, the Court allowed Ioppolo leave to amend his complaint to address the AANS's dismissal arguments.

On August 6, 2008, Plaintiff filed a Second Amended Complaint against the AANS for defamation, abuse of process, abuse of personal rights, and intentional infliction of emotional distress. Again, the AANS moved to dismiss Plaintiff's amended complaint on August 22, 2008. The Court now addresses the merits of the claims raised by the AANS in its Motion to Dismiss.

### Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(6), on a motion to dismiss for failure to state a claim, the Court accepts all well-pleaded facts in the complaint as true and liberally construes all factual allegations in the light most favorable to the plaintiff.[1] The Supreme Court has recently had occasion to revisit the Rule 12(b)(6) standard in ways that are relevant to the Court's consideration of the instant case, and the Court finds it useful to quote at length:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [Bell Atlantic Corp. v.] Twombly, [550 U.S. 544, 554, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)] the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

[1] *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

> draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Ashcroft v. Iqbal*, 550 U.S. 129.

## Discussion

AANS argues that Ioppolo's Complaint fails to sufficiently support his claims for defamation, abuse of process, abuse of personal rights, and intentional infliction of emotional distress with factual assertions. The failure to do so, AANS argues, warrants a dismissal pursuant to Rule 12(b)(6) for failure to state a claim. In light of this assertion, the Court now addresses the merits of each claim raised by the parties.

### I. Defamation

The Court turns first to Plaintiff's defamation claims. Ioppolo alleges that the AANS defamed him by "knowingly and maliciously adopt[ing] the falsehoods and misrepresentations presented by Rumana and Cuffe and [making] them [its] own." Reply to Motion to Dismiss, p. 14. This maliciousness, Ioppolo contends, is demonstrated by the organization's decision to "push forward" with its proceedings despite its knowledge that the allegations of Rumana and Cuffe were "false and abusive." Plaintiff additionally alleges that the AANS defamed him through the publication of its Report of the Professional Conduct Committee PCC Report.

AANS counters and argues that Ioppolo's defamation claim must be dismissed because he has failed to allege that the AANS itself published any defamatory statements relating to the disciplinary proceeding in issue to anyone outside of the association. The Court agrees.

Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name. In order to establish a cause of action for defamation, four elements must be proven: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. *Cyprien v. Bd. of Supervisors for the Univ. of La. Sys.*, 5 So. 3d 862, 866 (La. 2009).

The Louisiana Supreme Court characterizes a statement as defamatory if it tends to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule. *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 674-675 (La. July 10, 2006). Defamatory words have traditionally been divided into two categories: those that are defamatory per se and those that are susceptible of a defamatory meaning. Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, without considering extrinsic facts or circumstances, are considered defamatory per se. *Id.* When a plaintiff proves publication of words that are defamatory per

se, falsity and malice (or fault) are presumed, but may be rebutted by the defendant. Injury may also be presumed. *Id.* When the words at issue are not defamatory per se, a plaintiff must prove, in addition to defamatory meaning and publication, falsity, malice (or fault) and injury. *Id.*

Here, Ioppolo has failed to state a claim regarding essential elements of his defamation claim against AANS. Nothing in the record suggests that the AANS published the Report of the Professional Conduct Committee PCC Report to anyone outside of the AANS, therefore, Plaintiff's defamation claim fails.

This point is demonstrated in the Fifth Circuit's recent decision in *Knatt v. Hospital Service District. No. 1 of East Baton Rouge Parish,* 2009 U.S. App. LEXIS 10451 (5th Cir. La. May 12, 2009), Plaintiff Knatt, a physician, filed suit against a hospital and certain hospital personnel arising out of the temporary suspension of his privileges at the defendant hospital. In his Complaint, Knatt alleged that several nurses defamed him when they made statements to hospital personnel regarding his erratic behavior and the working condition of his operating rooms. *Id.* The district court agreed and the defendants appealed.

On appeal, the Fifth Circuit affirmed the district court's dismissal of the defamation claims against various nurses for lack of publication because Knatt's complaint only alleged statements by the nurses to other hospital personnel related to their work. The Court observed that statements made between employees in the course and scope of their employment are not statements

communicated or publicized to third persons so as to constitute publication for a defamation claim. *Id.*

The Court's holding in *Knatt* supports the AANS's argument that Ioppolo has failed to state a cause of action for defamation against the AANS. Nothing in the record supports the notion that the AANS published any defamatory statements to a third party outside of the organization. Indeed, in Plaintiff's Second Amended Complaint, he admits this point specifically:

> These false, abusive and defamatory statements were published by the AANS through its officers, boards, agents and/or representatives, on March 4, 2005, April 18, 2005, April 5, 2006 and April 24, 2006. . . . These publications include a direct communication of these knowingly false and defamatory statements to the *entire membership of the organization* by the then-president of the AANS.

*Id.*

Considering the Fifth Circuit's holding in *Knatt*, accepting all well-pleaded facts in Ioppolo's Second Amended Complaint as true, and liberally construing all factual allegations in the light most favorable to Ioppolo, the Court still finds that Ioppolo has failed to state a cause of action for defamation against the AANS. The publication element of the defamation standard has simply not been met. For this reason, the Court dismisses Plaintiff's defamation claim against the AANS.

## II. Abuse of Process

In his Second Amended and Supplemental Complaint, Ioppolo argues that all of the defendants have utilized the AANS proceedings to extra-judicially attack and punish individuals who have testified against members and to threaten and

intimidate potential witnesses. He additionally argues that the AANS has specifically refused to police these abuses by its members and has, therefore, become complicit in their conduct. Second Amended Complaint, ¶ 13A.

The AANS responds and argues that Ioppolo has failed to allege specific facts that it acted with an ulterior motive and that it failed to follow its bylaws, procedural guidelines or other internal rules. AANS also contends that the enforcement of its internal rules and regulations does not constitute the "process" necessary to satisfy an abuse of process claim. Again, the Court agrees with the defendant.

To prevail on an abuse of process claim in Louisiana, a plaintiff must prove the following essential elements: "(1) the existence of an ulterior purpose; (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding."[2] These elements must both be met; "regular use of process cannot constitute abuse, even though the use was actuated by a wrongful motive, purpose, or intent, or by malice." *Nathans v. Vuci*, 443 So. 2d 690, 695 (La. App. 1st Cir. 1983). In sum, the plaintiff bears the burden of proving that the defendant had an ulterior motive and an irregularity in the process itself.

Meeting the elements of an abuse of process claim requires Ioppolo to demonstrate the actual use of "process." Louisiana jurisprudence suggests that "process" (as the term is contemplated in an abuse of process claim) comprises

---

[2] *Wardlaw ex rel. Owen v. Whitney Nat'l Bank*, 1994 U.S. Dist. LEXIS 11592, 3-4 (E.D. La. Aug. 16, 1994) (*citing Nathans v. Vuci*, 443 So. 2d 690, 694 (La. App. 1st Cir. 1983) (*citing Succession of Cutrer v. Curtis*, 341 So. 2d 1209, 1213-14 (La. App. 1st Cir. 1976) *writ denied* 343 So. 2d 201 (La. 1977))).

only legal process and/or court process.[3] Looking to the facts of this case, the PCC's review of the charges of unprofessional conduct involving Ioppolo, and the subsequent appeals to the AANS Board of Directors and general membership, do not constitute legal process or court process under Louisiana law. Never in his Second Amended and Supplemental Complaint does Ioppolo allege that Defendants utilized legal process, or even court process. Instead, Ioppolo makes reference to the proceedings commenced with the AANS by Rumana and Cuffe. The actions taken by the AANS amount to an internal enforcement of its own rules and regulations; these proceedings do not qualify as "process" as contemplated by the abuse of process test. Therefore, the Court must dismiss Ioppollo's abuse of process claim because the second element, which requires Ioppollo to demonstrate an irregularity in the process, cannot be met.

Even if the Court were to find that the PCC and AANS investigation constituted process under Louisiana law, Ioppolo's abuse of process claim still fails because he has not alleged specific facts that the AANS acted with an ulterior motive. For these reasons, the Court dismisses Plaintiff's abuse of process claim against the AANS.

### III. Abuse of Personal Rights

---

[3] *Almerico v. Dale*, 927 So. 2d 586, 594 (La. App. 5 Cir. Mar. 28, 2006). ("In reviewing Louisiana cases on abuse of process, we find none in which the "process" part of the cause of action has been considered to be anything other than legal process, or court process. In particular, we find no cases in which "process" refers to a civil service disciplinary matter that has not come within purview of a court proceeding.")

Ioppolo alleges that the PCC abused the legitimate right to hear disputes among members. In his Second Amended and Supplemental Complaint, he cites the following as examples of such abuse:

- Rumana and Cuffe told the PCC that they were advised by their attorneys that if they didn't settle they faced impending financial disaster because of the threat of a judgment beyond their insurance limits. Plaintiff alleges that this statement constitutes hearsay and that it is false. Nonetheless, the PCC relied on this unsupported hearsay in reaching the conclusions set forth in the PCC report.

- Rumana and Cuffe told the committee that jurors in the trial were "greatly confused by the starkly conflicting medical testimony but they felt sorry for Ahmad Jones and were inclined to 'find some money for him.'" This statement is also hearsay and false and clandestine meetings with jurors by the defendants (if they actually happened) should never have been considered in the proceedings of the PCC. This false and prejudicial statement was relied on by the PCC in reaching the conclusions set forth in its Report.

- The medical record in the underlying case showed that two different doctors had seen movement in the patient's legs and feet upon admission. This clear evidence that total quadriplegia had not occurred was medically undeniable, yet it was belittled by the committee, which ignored the medical record because Rumana and Cuffe told the members that they had met privately with one of the doctors who had seen the movement and that after this meeting he said there was no movement. It is clear from its ruling that this false and prejudicial statement had an impact on the PCC's findings.

- Rumana and Cuffe told the committee "Ahmad Jones (the injured 10 year old patient in the underlying case) was…riding on a stolen bicycle." Prejudicial unsubstantiated comments such as this, contained in their original complaint, were a thinly veiled attempt at the character assassination of the patient and was typical of the innuendo, prejudice, and falsehood woven

throughout the complaint and relied upon by the PCC in reaching its conclusion.

- The AANS failed to order Rumana and Cuffe to "cease and desist" in their use of the PCC Report.

- The AANS failed to inform each and every third party to whom Rumana and Cuffe sent the PCC Report that the report was not final and had been improperly sent to them[4]

AANS disagrees, arguing that Ioppolo fails to set forth any basis for a claim against it pursuant to the abuse of rights doctrine. Again, the Court agrees with the AANS.

"To recover under a theory of abuse of rights, Plaintiff must show that he has suffered unnecessarily some harsh consequence as a result of the Defendant's exercising a legal right without legitimate or serious interest. *Morse v. J. Ray McDermott & Co.*, 344 So. 2d 1353 (La. 1977). The Louisiana Supreme Court has set forth four tests for determining whether a legal right has been abused: "(1) whether the right was exercised primarily or exclusively to harm another; (2) whether there was a serious or legitimate interest worthy of protection; (3) whether the right was exercised in violation of moral rules, good faith or elementary fairness; and (4) whether the right was exercised for purposes other than for which the right was granted." *Ill. Cent. Gulf R.R. v. Int'l Harvester Co.*, 368 So. 2d 1009 (La. 1979).

---
[4] Second Amended Complaint, ¶¶ 13A – 13E.

Considering each example, Ioppolo has not provided the Court with any evidence to satisfy any of the tests for abuse of rights against the AANS. He has not alleged that (1) the AANS used a right exclusively to harm him; (2) there is no serious or legitimate interest supporting the AANS's exercise of the right; (3) the AANS acted against moral rules, good faith, or fundamental fairness in conducting the PCC review process; or (4) that the AANS exercised its right for any purpose other than to determine whether disciplinary action was appropriate against him. Therefore, because the Court finds that Ioppolo has failed to state a cause of action concerning the abuse of personal rights claim, it is hereby dismissed.

## IV.   Intentional Infliction of Emotional Distress

Ioppolo claims that he has suffered "substantial emotional distress" at the hands of his accusers and advances a claim for intentional infliction of emotional distress against Defendants. The AANS disagrees, countering that Ioppolos allegations merely reveal that it administered Rumana and Cuffe's charges of unprofessional conduct against Ioppolo in conformance with its by-laws. Again, the Court agrees with the defendant.

Under Louisiana law, a plaintiff alleging intentional infliction of emotional distress must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result

from his conduct. *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). The Louisiana Supreme Court has stated that the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. *Id.* "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and leave him to exclaim, 'Outrageous.'" *Fletcher v. Wendelta, Inc.*, 999 So. 2d 1223, 1230 (La. App. 2d Cir. 2009).

Applying these precepts of law to the facts of the instant case, the Court finds that Ioppolo has failed to establish his right to recover from the AANS for intentional infliction of emotional distress. Ioppolo has failed to allege (1) that the AANS's conduct was extreme and outrageous; (2) that the emotional distress he suffered was severe; and (3) that the AANS desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from its conduct. In fact, looking to the Second Amended and Supplemental Complaint, Ioppolo merely concludes that:

> As a result of the actions of defendants Drs. Rumana & Cuffe, and the AANS, petitioner has suffered public embarrassment, humiliation, and damage to his professional reputation, as well as,

past, present and future mental anguish and pain, and past, present and future loss of enjoyment of life, injury to reputation and loss of business opportunity. Therefore, petitioner is entitled to recover compensatory damages from these defendants.

Second Amended Complaint, ¶ 12. These allegations simply do not rise to the high level of "extreme and outrageous" conduct to constitute a tort under existing Louisiana law.

## Conclusion

Accordingly, it is hereby ordered that Defendants' motions (docs. 9 & 111) to dismiss are GRANTED.

Signed in Baton Rouge, Louisiana, on August 12, 2011.

**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**