UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ANTHONY S. IOPPOLO, MD,

VERSUS

CHRISTOPHER RUMANA, MD,
MARK CUFFE, MD, AMERICAN
ASSOCIATION OF NEUROLOGICAL
SURGEONS & AMERICAN COLLEGE
OF SURGEONS

CIVIL ACTION

No. 06-193-JJB

### RULING ON DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on renewed motions to dismiss by Defendants Mark J. Cuffe, M.D. ("Cuffe) and Christopher Rumana, M.D. ("Rumana"). (Doc. 164 & Doc. 166). Plaintiff Anthony S. Ioppolo, M.D. ("Ioppolo") filed a memorandum in opposition, (Doc. 170), to which Defendants Cuffe and Rumana have filed replies. (Doc. 171 & Doc. 172). Oral argument is not necessary. The Court has removal jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons stated herein, the Court grants in part and denies in part.

I.

Ioppolo filed this action for defamation, abuse of process, abuse of personal rights, and intentional infliction of emotional distress against Rumana, Cuffe, American College of Surgeons ("ACS"), American Association of Neurological Surgeons, Inc. ("AANS"), and American Association of Neurosurgeons ("AAN") in the 19th Judicial District Court. Rumana and Cuffe are

1

the only remaining defendants. In Ioppolo's complaint, he alleged that he provided expert medical opinion testimony in a Florida medical malpractice suit brought against several defendants, including Rumana and Cuffe. After the trial, Rumana and Cuffe allegedly wrote a letter to the AANS criticizing Ioppolo's testimony and accusing him of giving "false and misleading testimony." (Doc. 170-1, p. 2). After receiving the letter, AANS assembled a Professional Conduct Committee ("PCC") to investigate the allegations. The PCC recommended the imposition which proposed sanctions against Ioppolo, which was to be reviewed by AANS's Board of Directors at its annual meeting in April of 2005.

Prior to the April 2005 meeting, Rumana and Cuffe allegedly violated the AANS's by-laws by sending copies of the PCC's preliminary findings to several institutions where Ioppolo maintained professional relationships, including two for which Ioppolo was the medical director. Ioppolo contends that Rumana and Cuffe sent a letter to the Louisiana Board of Medical Examiners on March 7, 2005, and on April 18, 2005, he learned that Rumana and Cuffe had made a complaint about him to the American College of Surgeons.

In April of 2005, the AANS Board of Directors approved and adopted the PCC's report. Ioppolo asserts that he requested the Board to require Rumana and Cuffe to cease circulating the provisional findings, but the Board did not honor his request. Ioppolo alleges that these communications caused and continue to cause harm to his professional reputation and he has suffered mental

2

anguish, pain, loss of business opportunity, loss of enjoyment of life, humiliation and public embarrassment.

Rumana and Cuffe filed a joint motion to dismiss pursuant to F.R.C.P. 12(b)(6), and AANS also filed a separate motion to dismiss pursuant to F.R.C.P. 12(b)(6). On July 17, 2008, the motion was set for a hearing before the late Judge Tyson. The Court orally denied Rumana and Cuffe's joint motion to dismiss. (Doc. 144). The Court deferred ruling on AANS's motion to dismiss, and granted Ioppolo leave to amend his complaint. (Doc. 110).

On August 6, 2008, Ioppolo filed an amended complaint. (Doc. 109). In his amended complaint, Ioppolo expanded upon his abuse of process, abuse of personal rights, and intentional infliction of emotional distress claims. Ioppolo argued that Rumana and Cuffe told the PCC numerous statements that were false and/or hearsay, and that the PCC relied upon these statements in making their final conclusions. Additionally, Ioppolo amended Paragraph 6B, which states "AANS defamed plaintiff through the publication of its 'Report of the Professional Conduct Committee' . . . . dated December 28, 2004." (Doc. 109, p. 2-3). Prior to this amended complaint, there was no indication as to when the report was published.

In August 2011, this Court granted defendant AANS's motion to dismiss pursuant to F.R.C.P. 12(b)(6) on the grounds that Ioppolo failed to state a claim

3

for defamation, abuse of process, abuse of personal rights, and intentional infliction of emotional distress. (Doc. 130).

This Court found that Ioppolo failed to state a claim for defamation against AANS. To establish a cause of action for defamation, four elements must be proven:

> (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence of greater) on the part of the publisher; and (4) resulting injury.

*Cyprien v. Bd. of Supervisors for the Univ. of La. Sys.*, 2008-1067 (La. 1/21/09); 5 So.3d 862, 866. This Court found that Ioppolo failed to show that "AANS itself published any defamatory statements relating to the disciplinary proceeding . . . to anyone outside of the association." (Doc. 130, p. 7). Because the publication element had not been met, the Court granted AANS's motion to dismiss on this claim.

This Court also found that Ioppolo had failed to state a claim for abuse of process. To establish a cause of action for abuse of process, two elements must be proven: "(1) the existence of an ulterior purpose [and] (2) a wilful act in the use of the process not proper in the regular prosecution of the proceeding." *Succession of Cutrer v. Curtis*, 341 So.2d 1209, 1213-14 (La. App. 1 Cir. 1977). Furthermore, "abuse of process is the misuse of legal process for an ulterior purpose." *Id.* (citation omitted). This Court found that the "actions taken by the AANS amount to an internal enforcement of its own rules and regulations," and

4

this is not the type of process "as contemplated by the abuse of process test." (Doc. 130, p. 11). This Court also found that even if the PCC and AANS investigation did constitute process, the claim still fails because Ioppolo did not "allege[] specific facts that the AANS acted with an ulterior motive." (Doc. 130, p. 11). Therefore, this Court dismissed Ioppolo's abuse of process claim.

This Court also dismissed Ioppolo's abuse of personal rights claim against AANS. The doctrine of abuse of rights applies when one of the following conditions is met:

> (1) The predominant motive for exercise of the right is to cause harm; (2) there is no serious or legitimate motive for exercise of the right; (3) the exercise of the right violates moral rules, good faith, or elementary fairness; or (4) the exercise of the right is for a purpose other than that for which it was granted.

*Steier v. Heller*, 723 So.2d 787, 791 (La. App. 2 Cir. 1999). This Court found that Ioppolo had failed to allege any facts that would support finding a cause of action under one of the four possible conditions for abuse of personal rights claim, and dismissed this claim against AANS.

Finally, this Court also dismissed Ioppolo's claim of intentional infliction of emotional distress against AANS. In order to recover for intentional infliction of emotional distress, a plaintiff must show

> (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that

5

> severe emotional distress would be certain or
> substantially certain to result from his conduct.

*White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). The Court found that on the face of Ioppolo's amended complaint, Ioppolo had failed to allege sufficient facts to meet any of the elements.

Rumana and Cuffe both filed renewed motions to dismiss pursuant to F.R.C.P. 12(b)(6). (Doc. 164 & Doc. 166). Both Rumana and Cuffe argued that all of the claims that Ioppolo alleges have prescribed as a matter of law. In addition, both Rumana and Cuffe urged that this Court should apply its reasoning in granting AANS's motion to dismiss with respect to abuse of process, abuse of personal rights, and intentional infliction of emotional distress on the grounds that Ioppolo failed to state a claim. Moreover, Cuffe argued that Ioppolo failed to state a defamation claim because the statements were found to be true, and truth is an absolute defense, or in the alternative, because Cuffe had a "reasonable belief in the truth of [his] assertions," there can be no malice on Cuffe's part. (Doc. 164-1, p. 9-10). Additionally, Cuffe raised the defense of privilege. (Doc. 164-1). Rumana did not address the substantive elements of a defamation claim in his motion.

Ioppolo filed an opposition, arguing that Rumana and Cuffe's motions should be denied because they were procedurally improper, prevented by the "law-of-the-case doctrine," and the substantive law mandates denial. (Doc. 170). Furthermore, Ioppolo argued that the reasoning applied to AANS should not

6

Case 3:06-cv-00193-JJB-SCR   Document 173   10/16/12   Page 6 of 14

apply to Rumana and Cuffe, because there is a distinction between a "defendant doctor and an administrative body." (Doc. 170, p. 1-2). Ioppolo contended that he was not ordered to amend his complaint with respect to Rumana and/or Cuffe, but with respect to AANS. Because this Court had already denied Rumana and Cuffe's motions to dismiss, and his claims against them have not changed since the original motion to dismiss was denied, Ioppolo argued that Rumana and Cuffe should be prevented from "re-test[ing] a complaint already found to be sufficient." (Doc. 170, p. 4).

Ioppolo further argued that the "law-of-the case doctrine" prevented re-argument and multiple 12(b) motions are barred. Ioppolo addressed the substantive elements of each claim, propounding reasons as to why he has sufficiently stated a claim. Finally, Ioppolo urged that none of his claims have prescribed. Ioppolo argued that because he "did not know about the defamatory remarks at the time they were made, nor was the injury inflicted immediately apparent to him," his action was timely. (Doc. 170, p. 19). Ioppolo cited *Wiggins v. Creary* for the proposition that an "original author of a libelous publication is not to be held liable for the voluntary republication of it by others" but "an exception exists where the republication is the natural and probable consequence of the defendant's act." *Wiggins v. Creary*, 475 So.2d 780, 782 *on reh'g* (La. App. 1 Cir. 1985). Ioppolo argued that each republication of the defamatory statements by the AANS was a natural and probable consequence of Rumana and Cuffe's

7

initial defamatory statements. Ioppolo argued that in order for the defamation claim to have prescribed, this Court would have to assume that he knew of the initial defamation "made at an unknown time" by Rumana and Cuffe, and he knew of the "defamation contained in the PCC report of December, 24, 2004." (Doc. 170, p. 20). Finally, Ioppolo contended that he did not know when the defamatory statements were made and because all subsequent publications were the "natural and probable consequence" of Rumana and Cuffe's actions, Rumana and Cuffe are still liable for those publications, which have not prescribed. (Doc. 170, p. 20).

Ioppolo also argued that his abuse of process, abuse of rights, and intentional infliction of emotional distress claims have not prescribed. Ioppolo asserted that his abuse of process cause of action did not arise until April of 2005 because that was when Rumana and Cuffe "use[d] the AANS process for sanctioning members." (Doc. 170, p. 20). Although Ioppolo only addressed the abuse of process argument, the Court assumes that Ioppolo intended for this also to apply to his abuse of rights claim because this argument fell under a heading listing both claims. Finally, Ioppolo asserted that his intentional infliction of emotional distress claim has not prescribed because Rumana and Cuffe "did not abate their outrageous personal crusade of aggression" until March or April of 2005. (Doc. 170, p. 21).

8

Rumana and Cuffe both filed reply memoranda. (Doc. 172 & Doc. 171). Both argued that Ioppolo's amended complaint included more factual details relating to his abuse of rights, abuse of process, and intentional infliction of emotional distress claims, as well as the date of the PCC report, which was previously omitted. Additionally, both argued that the law-of-the-case doctrine is not applicable. Finally, both argued that while the claims have prescribed, Ioppolo failed to state causes of action for the claims, further warranting dismissal.

II.

As a threshold matter, the Court does not find that the "law-of-the-case doctrine" prevents this motion from being brought. The "law-of-the-case doctrine does not operate to prevent a district court from reconsidering prior rulings," and it functions to "prevent unnecessary reconsideration of previously decided issues." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010). However, this rule "yields to adequate reason." *Id.* (citations omitted). Courts are permitted to review and reconsider its prior interlocutory decisions "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.* (quotations and citations omitted). This Court orally dismissed Rumana and Cuffe's motions to dismiss based on the allegations in the first complaint. However, the allegations in the second amended complaint, as well as this Court's later ruling on AANS's

motion to dismiss, has provided sufficient reasons to review and reconsider its prior decision. Additionally, the Court finds that multiple 12(b)(6) motions are not barred in this instance because the issue of prescription has not been raised nor addressed by this Court.

Rule 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Louisiana's law on prescription controls because a "federal court sitting in diversity will apply state prescription periods as substantive law." *Ricard v. Essex Ins. Co.*, 2009 WL 2762711, at *2 (E.D. La. 2009). Delictual actions have a one year prescriptive period, which "commences to run from the day injury or damage is sustained." LSA-C.C. art. 3492. Defamation is a delictual claim, and is subject to the one year prescriptive period. *See Wiggins v. Creary*, 475 So.2d 780, 781 (La. App. 1 Cir. 1985). Similarly, because abuse of process, abuse of rights, and intentional infliction of emotional distress are tort claims, they are subject to a one year prescriptive period. *See Godfrey v. Reggie*, 2011-1575 (La. App. 2 Cir. 5/2/12); 94 So.3d 82, 89; *Thibaut v. Thibaut*, 607 So.2d 587, 597 (La. App. 1 Cir. 1992).

Because defamation claims are subject to a one year prescriptive period, which begins from the day injury or damage is sustained, "damages are

sustained from the date the injury is inflicted, if immediately apparent to the victim, even though the extent of the damages may not yet be known." *Collinson v. Tarver Land Dev., LLC*, 2012 WL 688551, at *1 (W.D. La. 2012). Furthermore, "[k]nowledge of the damage-causing publication by the plaintiff is required for the commencement" of the prescriptive period. *Id.* Finally, because defamation is not a continuous tort, subsequent publications to a third person create a separate cause of action. *Id.* While generally an "original author of a libelous publication is not to be held liable for the voluntary republication of it by others," the original author will be held liable if "the republication is the natural and probable consequence of the defendant's act." *Wiggins*, 475 So.2d at 782, *on reh'g*.

Here, Rumana and Cuffe argue that the PCC's report, published on December 28, 2004, was based on the letter that they allegedly published to the AANS. Because the original publication of the allegedly defamatory words occurred prior to December 28, 2004, and Ioppolo did not commence suit until February 9, 2006, the defamation claim prescribed. Ioppolo contends that he did not know when the initial defamation occurred because they were not immediately apparent.

The Court finds that Ioppolo's defamation claim against Rumana and Cuffe has prescribed, but only with respect to the initial publication. Because the PCC report was published on December 28, 2004, and Ioppolo's amended complaint alleges this, the Court assumes that Ioppolo became aware of the report's

findings shortly thereafter. However, the Court further finds that the alleged subsequent publications of the preliminary report made by Rumana and Cuffe to the Board of Medical Examiners and other institutions in March of 2005, if found to be defamatory, are within the one year prescriptive period. Additionally, the Court finds it is a question of fact whether subsequent republication is the natural and probable consequence of Rumana and Cuffe's acts, which should not be addressed in a 12(b)(6) motion.

The Court does not find it necessary to address whether the abuse of process claim has prescribed. The Court adopts its August 12, 2011 Ruling on AANS's motion to dismiss with respect to these claims. Ioppolo has failed to allege facts to show that the PCC and AANS investigation constitutes process under Louisiana law. Thus, the Court agrees with Rumana and Cuffe and grants their motion to dismiss with respect to this claim.

The Court finds that the abuse of personal rights claim has prescribed. In Ioppolo's amended complaint, Ioppolo alleges that Rumana and Cuffe provided false statements and/or hearsay to the PCC, which informed the PCC's December 28, 2004 decision. Because any potential abuse of personal rights occurred prior to this decision, and the claim has a prescriptive period of one year, the Court finds that this claim has prescribed. Therefore, the Court grants Rumana and Cuffe's motion to dismiss with respect to this claim.

The Court finds Ioppolo has failed to allege sufficient facts to support an intentional infliction of emotional distress cause of action. In this Court's August 12, 2011 ruling, this Court found that the allegations "simply do not rise to the high level of 'extreme and outrageous' conduct to constitute a tort under existing Louisiana law." (Doc. 130, p. 16). Thus, the Court grants Rumana and Cuffe's motion to dismiss with respect to this claim.

III.

For the foregoing reasons, Defendants' renewed motions to dismiss (Doc. 164 & 166) are GRANTED with respect to the claims for abuse of process, abuse of personal rights, and intentional infliction of emotional distress, and DENIED with respect to the claim for defamation.

Signed in Baton Rouge, Louisiana on October 16th, 2012.

_____
**JAMES J. BRADY, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**